T.C. Summary Opinion 2006-75

UNITED STATES TAX COURT

AL SAMPSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4170-05S.                    Filed May 8, 2006.

Al Sampson, pro se.

<u>Catherine G. Chang</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of sections 6330(d) and 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times.

This proceeding arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) sent to petitioner on February 19, 2005. Pursuant to sections 6320(c) and 6330(d), petitioner seeks review of respondent's determination sustaining the filing of a notice of Federal tax lien against petitioner. The issue for decision is whether respondent abused his discretion in rejecting an offer-in-compromise (OIC) that petitioner submitted for the taxable year 2002.

## Background

Some of the facts have been stipulated, and they are so found. The record consists of the stipulation of facts and supplemental stipulation of facts with attached exhibits, an additional exhibit admitted during trial, and the testimony of petitioner. At the time of filing the petition, petitioner resided in San Francisco, California.

Petitioner was 43 years old at the time of trial. He has been sporadically employed throughout his adulthood. Social Security records covering the taxable years 1978 through 2003 indicate petitioner's annual wage income has never exceeded $19,432. The records also indicate petitioner earned no wage

income from 1998 through 2003.[1]  For the past several years, petitioner has been a student at City College of San Francisco (City College).  At the time of trial, petitioner was a senior at City College but was unsure when he would graduate.  Petitioner indicated that City College had recently reduced its offering of courses due to budget constraints, which has delayed his graduation.  Petitioner has maintained himself during this time by using student loan proceeds and by minimizing his living expenses.

In the taxable year 2002, petitioner won a car from Centra Marketing & Communications, LLC (Centra) as part of an Internet sales promotion.  Petitioner sold the car shortly after receiving it, although it is not clear what he did with the proceeds.  Centra issued a Form 1099-MISC, Miscellaneous Income, to petitioner reflecting $38,540 of gross income attributable to the car.  Petitioner reported that amount on his 2002 Federal income tax return, as well as $146 of interest income, but made no payments toward his tax liability.

Respondent made assessments against petitioner for the taxable year 2002 totaling $5,942.01 for income tax and related penalties and interest.  In July 2004, respondent filed a notice of Federal tax lien and sent petitioner a Notice of Federal Tax

---

[1] The record does not indicate whether petitioner had other sources of income during these years, other than a small amount of interest income that he received in the taxable year 2002.

Lien Filing and Your Right to a Hearing Under IRC 6320. Petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing. He also submitted an OIC, in which he made a cash offer of $2,000 to compromise his 2002 tax liability.[2] The OIC was based on doubt as to collectibility.

Petitioner's OIC was assigned to an Appeals officer. As part of his evaluation of the OIC, the Appeals officer calculated the monthly income that petitioner could pay toward his 2002 tax liability. The Appeals officer used petitioner's 2002 gross income of $38,686 as a baseline and then projected that amount over a 48-month period. After subtracting allowable expenses, the Appeals officer calculated that petitioner could pay $932 a month toward his 2002 tax liability, which would allow him to pay the liability in full in less than a year.

Petitioner and the Appeals officer participated in an administrative hearing in January 2005. Prior to the hearing, the Appeals officer was unaware that petitioner's 2002 gross income was attributable almost entirely to the car he had received from Centra. After learning of this fact, the Appeals officer requested and received additional information from petitioner.

---

[2] Petitioner intended to use his student loan proceeds to pay the $2,000.

On January 19, 2005, the Appeals officer sent petitioner a letter stating in part:

> Part of the process of evaluating an offer from a person who is unemployed is to consider what that person would earn if they were working. Usually that is done by looking at previous income history. In your case, that is problematical because of your history, but it seems clear that were you to find employment you would be able to pay the tax liability for 2002. The fact that you have chosen to go to school rather than work is not really relevant.

On February 19, 2005, respondent issued petitioner a notice of determination sustaining the filing of the notice of Federal tax lien. The notice of determination states that the Appeals officer verified that the requirements of law and administrative procedure had been met and that petitioner's OIC was rejected because petitioner could fully pay his 2002 tax liability.

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person when a demand for the payment of the person's liability for taxes has been made and the person fails to pay those taxes. Such a lien arises when an assessment is made. Sec. 6322. Section 6323(a) requires the Secretary to file notice of Federal tax lien if such lien is to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that a taxpayer shall be notified in writing by the Secretary of the filing of a Federal tax lien and provided with an opportunity for an administrative hearing. Sec. 6320(b). An administrative hearing under section 6320 is conducted in accordance with the procedural requirements of section 6330. Sec. 6320(c). At the administrative hearing, a taxpayer is entitled to raise any relevant issue relating to the unpaid tax, including a spousal defense or collection alternatives such as an OIC or an installment agreement. Sec. 6330(b) and (c)(2); sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

A taxpayer also may challenge the existence or amount of the underlying tax liability, including a liability reported on the taxpayer's original return, if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B); see also Urbano v. Commissioner, 122 T.C. 384, 389-390 (2004); Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004). Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Where the validity of the underlying tax liability is not properly at issue, however, the Court will review the Commissioner's administrative determination for abuse

of discretion.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  See Freije v. Commissioner, 125 T.C. 14, 23 (2005); Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).

Petitioner does not seek to challenge his underlying tax liability.  He challenges only the rejection of his OIC.  We therefore review for abuse of discretion.

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws.  The Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's reasonable collection potential.  Lemann v. Commissioner, T.C. Memo. 2006-37.  A taxpayer's reasonable collection potential is calculated by determining and adding together the taxpayer's net equity and his future income.  See id.; sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  Respondent concedes that petitioner had no equity available to satisfy his 2002 tax liability.  Respondent argues, however, that petitioner had sufficient future income to pay his tax liability in full.[3]

_____

[3] The parties do not dispute the amount of petitioner's allowable living expenses.

Section 7122(c) provides that the Secretary shall prescribe guidelines for IRS personnel to determine whether an OIC is adequate and should be accepted. These guidelines have been published and include certain provisions of the Internal Revenue Manual (IRM). See Lemann v. Commissioner, supra; Spurgin v. Commissioner, T.C. Memo. 2001-290. IRM sec. 5.8.5.5 (Nov. 15, 2004) provides guidelines for calculating a taxpayer's future income. "Future income is defined as an estimate of the taxpayer's ability to pay based on an analysis of gross income, less necessary living expenses, for a specific number of months into the future." IRM sec. 5.8.5.5(1) (Nov. 15, 2004). For cash offers, income and expenses are estimated for a 48-month period. Id. The calculation of future income should take into account "the taxpayer's overall general situation including such facts as age, health, marital status, number and age of dependents, highest education or occupational training and work experience." IRM sec. 5.8.5.5(3) (Nov. 15, 2004). The IRM provides that "Some situations may warrant placing a different value on future income than current or past income indicates". IRM sec. 5.8.5.5(5) (Nov. 15, 2004). For example, if income or necessary expenses will increase or decrease, then the amount or number of expected payments should be adjusted accordingly. Id. If a taxpayer is "temporarily unemployed or underemployed", then income should be calculated as if the taxpayer were fully employed. Id. If a

taxpayer has a "sporadic employment history or fluctuating income", then earnings over several prior years should be averaged.  Id.

As the Appeals officer acknowledged, estimating petitioner's future income is "problematical".  Petitioner intends to graduate and find work, but it is uncertain when he will graduate, what type of employment he will find, or how much he will earn.  While the IRM addresses situations where the taxpayer is "temporarily" out of work, petitioner has not been employed for several years. Petitioner has a history of sporadic employment and thus is a candidate for income averaging.  See IRM sec. 5.8.5.5(5) (Nov. 15, 2004).  Because of his limited earnings, however, petitioner's average income over the several years prior to 2002 is close to zero.

Despite the unusual circumstances of petitioner's case, the IRM provides the following guidance:

> In some instances, a future income collateral agreement may be used in lieu of including the estimated value of future income in reasonable collection potential (RCP). When investigating an offer where current or past income does not provide an ability to accurately estimate future income, the use of a future income collateral agreement may provide a better means of calculating an acceptable offer amount. * * *

> Example:  A taxpayer is currently in medical school and it is anticipated that upon graduation income should increase dramatically.

IRM sec. 5.8.5.5(6) (Nov. 15, 2004).

Assuming petitioner secures employment after graduation, he likely will earn significantly more income than he has over the past several years. For the reasons stated above, however, it is difficult to estimate the amount of his future income or when he will receive such income. The facts of petitioner's case therefore appear to fit squarely within IRM sec. 5.8.5.5(6). Nevertheless, there is no indication that the Appeals officer considered using a future income collateral agreement. Instead, the Appeals officer determined that because petitioner's status as a student was "not really relevant", petitioner's future income included the wages he could have earned, but chose to forgo, in order to pursue his studies (forgone earnings). The Appeals officer also determined that petitioner's forgone earnings were sufficient to pay his 2002 tax liability in full.

It is true petitioner could have increased his income had he discontinued his education and found work; however, we can find nothing in the IRM suggesting that a student's forgone earnings are a component of future income. In fact, the example in IRM sec. 5.8.5.5(6) indicates a taxpayer can qualify for an OIC despite choosing to pursue education rather than employment. The example does not include forgone earnings as part of the taxpayer's reasonable collection potential.

Even if petitioner's future income did include forgone earnings, the difficulty of calculating the amount of such

earnings is evident.  Petitioner's forgone earnings presumably depend on the type of employment he could obtain, which in turn depends on factors such as his work experience, job skills, and the strength of the labor market.  There is no indication the Appeals officer considered these factors or attempted to calculate petitioner's forgone earnings.[4]  Rather, it appears the Appeals officer assumed that petitioner would earn sufficient income, after allowable expenses, to pay his tax liability in full.  Petitioner's history of intermittent employment and modest wage income raises doubts about the validity of this assumption.  Furthermore, it is unclear whether the Appeals officer considered that petitioner might have increased expenses if he discontinued his studies, such as student loan repayments.

We conclude the Appeals officer abused his discretion in rejecting petitioner's OIC on the ground that petitioner had sufficient future income to pay his 2002 tax liability in full.  We therefore shall remand this matter to the Appeals Office for reconsideration of petitioner's OIC.

---

[4] As mentioned supra, the Appeals officer prepared an income projection based on petitioner's 2002 gross income of $38,686.  After petitioner explained that he had received a car as part of a sales promotion, however, it appears the Appeals officer acknowledged the income projection was inaccurate.  There is no indication the Appeals officer prepared a revised income projection.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.