T.C. Memo. 2006-37

UNITED STATES TAX COURT

ARTHUR A. LEMANN III AND ROBERTA A. LEMANN, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12857-02L.                   Filed March 7, 2006.

Arthur A. Lemann III and Roberta A. Lemann, pro sese.

<u>Susan S. Canavello</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  The petition in this case was filed in
response to a Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 6330.[1]  Respondent has moved

_____

    [1] Unless otherwise noted, all section references are to the
Internal Revenue Code applicable to the periods at issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

for summary judgment pursuant to Rule 121.  Respondent's motion is supported by the Declaration of Daniel J. Mazaroli, the Appeals officer who conducted petitioners' section 6330 hearing, and relevant documents from the administrative file. Petitioners' opposition is supported by the Declaration of Arthur A. Lemann III and an attached exhibit setting forth Mr. Lemann's interests in certain family corporations.

The only issue before the Court is whether respondent abused his discretion in determining to proceed to levy with respect to petitioners' income tax liabilities for the taxable years 1992, 1993, 1994, and 1996.  We conclude that no genuine issue as to any material fact exists and that respondent is entitled to summary judgment in his favor.

## Background

Petitioners are Arthur A. Lemann III, a practicing attorney, and his wife, Roberta A. Lemann, a clerk.  At the time the petition was filed, petitioners resided in New Orleans, Louisiana.

Petitioners do not dispute their underlying tax liability. As of the date the notice of levy was issued, petitioners' unpaid Federal income tax liabilities were as follows:

| Year | Amount |
|------|--------|
| 1992 | $31,435 |
| 1993 | 50,236 |
| 1994 | 83,218 |
| 1996 | 36,302 |
| Total | 201,191 |

On January 30, 2001, respondent sent petitioners a Letter 1058, Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing. On February 26, 2001, petitioners timely filed Form 12153, Request for a Collection Due Process Hearing. By letter dated March 29, 2001, the Appeals officer first assigned to conduct the section 6330 hearing noted that petitioners had previously requested an installment payment plan and asked that petitioners submit a copy of their prior proposal and updated financial documents. Petitioners promptly provided copies of their previously submitted installment agreement proposal to pay $1,500 per month and their Form 433-A, Collection Information Statement for Individuals. Petitioners indicated that their financial situation had not changed since the earlier submission. Their Form 433-A indicated that petitioners had net equity in their assets of approximately $31,000, monthly income of $7,423, and monthly expenses of $7,450.[2]

---

[2] While petitioners' Form 433-A lists total monthly expenses of $7,450, the sum of the individual expense items identified therein is $7,455.

The record shows no further activity with respect to the hearing until April 8, 2002, when a second Appeals officer assigned to conduct the hearing sent a letter requesting that petitioners review and update their previously submitted Form 433-A and provide additional documents related to their financial condition. Petitioners submitted the requested information on April 16, 2002. On their revised Form 433-A, petitioners indicated they had net equity in their assets of approximately $67,000 (up from $31,000), and monthly gross income of $7,715 per month (up from $7,423). Petitioners' monthly expenses remained unchanged.

By letter dated April 19, 2002, the Appeals officer advised petitioners that their proposed installment agreement of $1,500 per month was not acceptable because it would not result in payment of all amounts due within the applicable periods of limitation on collection. The letter informed petitioners that an offer-in-compromise might serve as an alternative to the proposed levy and explained that such an approach would require petitioners to make a payment equal to the net realizable equity in their assets, which might require borrowing against those assets.

On April 22, 2002, petitioners submitted a Form 656, Offer in Compromise, in which they offered to make a one-time payment of $67,000 to compromise their aggregate unpaid tax liabilities

of $201,191.  Petitioners checked the "Doubt as to Collectibility" box as the basis on which they believed they were entitled to be considered for an offer-in-compromise.

The Appeals officer forwarded the offer-in-compromise to an offer specialist for review.  By letter dated May 7, 2002, the offer specialist informed petitioners that an acceptable offer amount would consist of both equity in assets and some portion of "future income" available to pay taxes; i.e., gross income less necessary living expenses.  The offer specialist further advised that her preliminary calculations showed a reasonable collection potential significantly higher than the offer petitioners had made.  The offer specialist's administrative file notes of the same day indicate that she had preliminarily computed petitioners' future income as $2,713 per month for 48 months, or $130,224.

The offer specialist's notes record that on May 3, 2002, she discussed with Mr. Lemann the monthly credit card expense of $1,600 reported by him on the revised Form 433-A, and advised him that this expense was not allowable in computing future income. On May 7, 2002, the offer specialist sent Mr. Lemann her preliminary income and expense computations in which she noted that, for purposes of evaluating petitioners' offer-in-

compromise, petitioners' future income was $2,713 for 48 months,[3] or $130,224. In a letter to her dated May 14, 2002, Mr. Lemann responded:

> It seems to me that the future income calculation overlooks two important facts:
>
> 1. I am now 60 years of age and may very well not have 4 more years of productivity;
>
> 2. Converting that future income potential into a $130,224.00 lump sum is impossible given my financial circumstances.

The offer specialist's notes record that she received this letter on May 21, 2002, and that on May 23, 2002, she discussed with Mr. Lemann the special circumstances that would give rise to a departure from the standard computation of future income and gave examples. The offer specialist's notes further record that Mr. Lemann did not provide her with any information that constituted special circumstances.

On May 24, 2002, the offer specialist forwarded her final computations of petitioners' reasonable collection potential to the Appeals officer. In computing petitioners' net realizable equity in assets, the specialist accepted petitioners' $125,000 estimate of the value of their residence as reported on their

---

[3] Under Internal Revenue Manual (IRM) guidelines, for purposes of evaluating "cash" offers-in-compromise such as petitioners', future income for 48 months is considered, whereas future income for 60 months is generally used when deferred payment offers-in-compromise (which may include both a lump-sum payment and an installment agreement) are evaluated. IRM, sec. 5.8.5.4 (Nov. 2000).

revised Form 433-A. The offer specialist reduced that amount to a "quick sale" value[4] of $100,000, which she offset with petitioners' reported $60,000 of indebtedness encumbering the residence, yielding net realizable equity of $40,000. Similarly, the offer specialist accepted petitioners' $2,000 estimate of the value of their two automobiles and discounted it to a $1,600 quick sale value. Overall, the offer specialist's final computation of petitioners' net realizable equity was $41,600.

With respect to future income, the offer specialist adjusted petitioners' reported monthly gross income and necessary living expenses as follows. She increased reported monthly wages by $412 to reflect the amounts included on petitioners' Forms W-2, Wage and Tax Statement, for 2001, and added monthly dividend income of $200 to reflect dividend income reported on petitioners' 2001 joint Federal income tax return. Thus, petitioners' gross monthly income was increased from $7,715 to $8,327.

Regarding monthly necessary living expenses, the offer specialist followed Internal Revenue Manual (IRM) guidelines and reduced petitioners' reported monthly transportation expenses from $680 to $289 and disallowed petitioners' claimed $1,600 monthly expense for credit cards. She also increased

---

[4] Quick sale value is defined as the estimate of the price a seller could get for an asset in a situation where financial pressures motivate a sale in a short time, usually 90 days or less. IRM, sec. 5.8.5.3.1 (Nov. 2000).

petitioners' reported monthly expense for housing and utilities by $50. The net effect of the offer specialist's adjustments to petitioners' monthly necessary living expenses was to reduce them from $7,455 to $5,514.

Overall, the offer specialist determined that petitioners had $2,813 in monthly future income available to pay off their tax liabilities, as compared to petitioners' reported figure of $265. The offer specialist further determined that petitioners could pay this amount for 59 months, resulting in aggregate payments out of future income of $165,967.

The foregoing calculations produced a reasonable collection potential of $207,567; i.e., $41,600 in net realizable equity plus $165,967 in future income. In her final report, the offer specialist noted that petitioners also had some interests in family corporations, interest in real property referred to as the B. Lemann Building, and possibly life insurance. She did not assign any value to these assets or rely upon them in determining petitioners' reasonable collection potential.[5] The offer specialist concluded that petitioners had failed to demonstrate any special circumstances that would justify calculating their reasonable collection potential outside the prescribed guidelines. Because the reasonable collection potential of

_____

[5] The offer specialist also noted that petitioners had previously entered into an installment agreement on which they had defaulted.

$207,567 exceeded petitioners' outstanding tax liabilities, the offer specialist recommended that petitioners' offer-in-compromise of $67,000 be rejected.

The Appeals officer accepted the offer specialist's recommendations. On June 10, 2002, the Appeals officer sent petitioners a letter explaining that their $67,000 offer-in-compromise would not be accepted because review indicated the entire outstanding balance of their tax liabilities could be collected over time. The letter explained that, in such circumstances, an installment agreement was the available collection alternative.

Based on the offer specialist's calculations, the Appeals officer proposed that petitioners make an initial lump-sum payment of $40,000,[6] and monthly payments of $2,820[7] commencing July 26, 2002. The letter further advised petitioners that, because their case had been under consideration since 2000, and an installment agreement had been determined to be the available alternative to a levy, their failure to accept the terms of the

---

[6] The Appeals officer's case memorandum indicates that he disregarded the $1,600 equity in petitioners' automobiles postulated by the offer specialist, concluding that their net realizable equity consisted only of the $40,000 equity in their residence as found by the offer specialist.

[7] The offer specialist had computed petitioners' monthly future income as $2,813. While the record does not disclose the basis on which the Appeals officer increased this figure to $2,820 for purposes of the installment agreement he proposed, we conclude that the difference is immaterial.

proposed installment agreement by June 20, 2002, would result in the issuance of a determination letter sustaining the proposed levy.

On June 18, 2002, Mr. Lemann sent a letter to the Appeals officer acknowledging and rejecting the proposed installment agreement. The letter read: "I simply cannot afford the payments you propose." The letter offered no further collection alternatives to the levy.

On July 16, 2002, a Notice of Determination was issued to petitioners which determined that the proposed levy was appropriate. The determination concluded: (1) That all requirements of applicable law and administrative procedures had been met; (2) that petitioners' proposed collection alternative of monthly installment payments of $1,500 was not acceptable because it would not result in full payment of the outstanding tax liabilities within the applicable periods of limitation on collection; (3) that petitioners' $67,000 offer-in-compromise based on doubt as to collectibility was unacceptable given that their net equity in assets and future income were sufficient to pay their outstanding tax liabilities in full;[8] and (4) that, in light of petitioners' refusal to accept the installment agreement

---

[8] The Appeals officer's case memorandum indicates that he, like the offer specialist, reached his conclusions regarding petitioners' ability to pay without relying on petitioners' interests in any family corporations or in the B. Lemann Building.

proposed by the Appeals officer that would have resulted in full payment of their outstanding liabilities, the levy was an appropriate balance between the need for efficient collection of taxes and petitioners' legitimate concern that the collection action be no more intrusive than necessary.

Petitioners timely sought review in this Court pursuant to section 6330(d).

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that no genuine issue of material fact exists, and factual inferences are drawn in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

Section 6331(a) authorizes the Secretary to levy against property and property rights where a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment is made.  Section 6331(d) requires the Secretary to send written notice of an intent to levy to the taxpayer, and section 6330(a) requires the Secretary to send a written notice to the taxpayer of his right to a section 6330 hearing at least 30 days before any levy is begun.

If a section 6330 hearing is requested, the hearing is to be conducted by the Commissioner's Office of Appeals and, at the hearing, the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(b)(1), (c)(1).  The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including challenges to the appropriateness of collection actions or offers of collection alternatives, such as an installment agreement or an offer-in-compromise.  Sec. 6330(c)(2)(A).  The taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).  At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection, taking into account,

among other things, collection alternatives proposed by the
taxpayer and whether any proposed collection action balances the
need for the efficient collection of taxes with the legitimate
concern of the taxpayer that the collection action be no more
intrusive than necessary.  See sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's
determination where we have jurisdiction over the type of tax
involved in the case.  Sec. 6330(d)(1)(A); see Iannone v.
Commissioner, 122 T.C. 287, 290 (2004).  Generally, in reviewing
the Appeals officer's determination for abuse of discretion we
may consider only those issues that the taxpayer raised during
the section 6330 hearing.  See sec. 301.6330-1(f)(2), Q&A-F5,
Proced. & Admin. Regs.; see also Magana v. Commissioner, 118 T.C.
488, 493 (2002).  Where the underlying tax liability is properly
at issue, we review the determination de novo.  E.g., Goza v.
Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying
tax liability is not at issue, we review the determination for
abuse of discretion.  Id.  Whether an abuse of discretion has
occurred depends upon whether the exercise of discretion is
without sound basis in fact or law.  See Freije v. Commissioner,
125 T.C. 14, 23 (2005); Ansley-Sheppard-Burgess Co. v.
Commissioner, 104 T.C. 367, 371 (1995).

The issues raised by petitioners with the Appeals officer
and herein concern only collection alternatives.  Petitioners

contend that respondent arbitrarily refused to accept their proposed installment agreement and subsequent offer-in-compromise, opting instead to proceed with a levy. They contend that they could not agree to the Appeals officer's proposed installment agreement because they lacked the financial resources and borrowing capacity to fulfill the terms of that agreement. Moreover, they contend that the formula used by respondent to determine the acceptable amount of an installment agreement or an acceptable offer-in-compromise failed to account adequately for petitioners' age, earning capacity, and poor financial circumstances. Finally, they assert that respondent's determination to proceed with a levy does not balance the need for efficient collection with their legitimate concern that the collection action be no more intrusive than necessary, see sec. 6330(c)(3)(C), and accordingly is arbitrary and capricious.[9]

As petitioners have not challenged the validity of the underlying tax liability, we review respondent's determination to proceed with collection for abuse of discretion. Jones v.

---

[9] In the petition, petitioners also assert that respondent's actions were "unduly punitive" in violation of petitioners' Eighth Amendment rights. They do not mention this claim in their opposition to respondent's motion for summary judgment, and we deem it abandoned. See Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Sundstrand Corp. v. Commissioner, 96 T.C. 226, 344 (1991); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988). In any event, petitioners have not cited, and we are unaware of, any authority suggesting that, where a taxpayer concedes that unpaid taxes are due, the Commissioner's decision to collect those taxes by means of his power to levy may violate the Eighth Amendment.

Commissioner, 338 F.3d 463, 466 (5th Cir. 2003); Sego v.

Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner,

supra.

Petitioners' Proposed Installment Agreement

The Appeals officer rejected petitioners' initial proposal to pay $1,500 per month to satisfy the liabilities at issue on the grounds that such an installment agreement would not result in satisfaction of the liabilities within the applicable periods of limitation on collection. Section 6159(a) gives the Secretary discretionary authority to enter into installment agreements to satisfy tax liabilities where he determines that it will facilitate collection. Under the statute and regulations applicable in 2002, generally only installment agreements that allowed a taxpayer to fully satisfy a tax liability before expiration of the applicable period of limitation on collection were authorized.[10] See sec. 6159(a); sec. 301.6159-1(a), Proced. & Admin. Regs. Petitioners' proposal to pay $1,500 per month was insufficient to satisfy their outstanding tax liabilities in full before the collection period expiration dates, the latest of which was July 21, 2007.[11] Accordingly, it cannot be said that

---

[10] Sec. 6159(a) was amended by the American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 843(a)(1)(B), 118 Stat. 1600, to authorize the Secretary to enter into installment agreements that do not fully satisfy a tax liability, effective for agreements entered into on or after Oct. 22, 2004.

[11] This proposition is self-evident. Petitioners'
(continued...)

the Appeals officer's rejection of petitioners' proposed installment agreement was an abuse of discretion.

Petitioners' Offer-in-Compromise

The Appeals officer also rejected petitioners' second proposed collection alternative, their $67,000 offer-in-compromise. In doing so, the Appeals officer essentially adopted the recommendation of the offer specialist that petitioners did not qualify for an offer-in-compromise based on doubt as to collectibility because they were capable of paying the entire amount of the outstanding liabilities (by making an initial payment of $40,000 and monthly installments of $2,820 thereafter for 59 months).

---

[11](...continued) outstanding liabilities when the notice of intent to levy was issued on Jan. 30, 2001, totaled $201,191. The aggregate payments under a $1,500 per month installment plan running through July 21, 2007 (the expiration date of the latest period of limitations) would have fallen substantially short of that figure, whether measured from the time when the Appeals officer preliminarily rejected it in Apr. 2002 ($96,000) or finally rejected it in the notice of determination in July 2002 ($91,500).

Sec. 6502(a)(2)(A) allows the taxpayer and the Commissioner to extend the period for collection in connection with entering into an installment agreement. The Commissioner's policy generally limits such extensions to no more than 5 years beyond the original expiration of the limitations period. IRM, sec. 5.14.2.1 (Mar. 2002). While there is no evidence that the Appeals officer considered such an extension, this issue is immaterial, as an addition of 5 years to the applicable periods of limitation would still not have resulted in full satisfaction of petitioners' liabilities; i.e., $1,500 per month for an additional 60 months would amount to another $90,000, which, when added to the $91,000 petitioners would pay before the expiration date, would still be less than petitioners' total unpaid tax liabilities.

Section 7122 authorizes the Secretary to compromise any civil case arising under the internal revenue laws and requires him to prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute. Sec. 7122(a), (c)(1). These guidelines must include published schedules of national and local allowances designed to ensure that taxpayers entering into a compromise will have adequate means to provide for basic living expenses and must also provide for a determination, based on the facts and circumstances of each taxpayer, that use of the published schedules will not result in the taxpayer's lacking adequate means to provide for basic living expenses. Sec. 7122(c)(2).

The contemplated guidelines and schedules have been published. See sec. 301.7122-1T(b)(3)(ii), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39020 (July 21, 1999); IRM, exh. 5.15.1-4 and -5 (Oct. 1999); IRM, exh. 5.15.1-10 and -11 (Oct. 2000). Under this administrative guidance, the Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's reasonable collection potential. Cf. Murphy v. Commissioner, 125 T.C. 301, 308-310 (2005). A taxpayer's reasonable collection potential is determined, in part, using published guidelines for certain national and local allowances for basic living expenses,

and essentially treating income and assets in excess of those needed for basic living expenses as available to satisfy Federal income tax liabilities. The foregoing formulaic approach is disregarded, however, upon a showing by the taxpayer of special circumstances including, but not limited to, advanced age, poor health, history of unemployment, disability, dependents with special needs, or medical catastrophe, that may cause an offer to be accepted notwithstanding that it is for less than the taxpayer's reasonable collection potential. Sec. 301.7122-1(c)(3), Proced. & Admin. Regs.; IRM, secs. 5.8.5.4 (Nov. 2000), 5.8.11.2.1 (Nov. 2001).

A taxpayer's reasonable collection potential is calculated by determining, then adding together: (1) The taxpayer's "net realizable equity"; i.e., quick sale value less amounts owed to secured lien holders with priority over Federal tax liens; and (2) his "future income"; i.e., the amount collectible from the taxpayer's expected future gross income after allowing for necessary living expenses. IRM, sec. 5.8.5.4 (Nov. 2000).

Here, the offer specialist followed published guidelines in computing petitioners' net realizable equity. The net realizable equity from their residence was computed by accepting petitioners' estimate of value ($125,000), reducing it to a quick sale value of $100,000 as prescribed by IRM, sec. 5.8.5.3.1 (Nov. 2000), and offsetting that figure by their claimed mortgage

indebtedness of $60,000. The resulting $40,000 figure was less than the $67,000 of equity in the residence reported by petitioners. Similarly, the offer specialist accepted petitioners' estimate of their equity in their automobiles ($2,000) and reduced it to quick sale value ($1,600), resulting in total net realizable equity of $41,600. In accepting the offer specialist's recommendations, the Appeals officer made a further concession to petitioners by disregarding the equity in their automobiles to conclude that their net realizable equity equaled $40,000.

The offer specialist likewise followed published guidelines in computing petitioners' future income. Following standard procedure, she increased the monthly income petitioners reported on their Form 433-A by $612 to conform with their 2001 Forms W-2 and dividend income reported on their 2001 Federal income tax return. See IRM, sec. 5.8.5.2.1 (Nov. 2001). She made adjustments to the expenses claimed by petitioners on the Form 433-A in accordance with the applicable procedures contained in the IRM.[12] Those procedures allow taxpayers the lesser of the

---

[12] The IRM sets forth procedures for evaluating both proposed installment agreements and offers-in-compromise. See IRM, secs. 5.15.1-5.15.1.4 (Mar. 2000). Those procedures contain guidelines for allowable necessary and conditional expenses. Necessary expenses are those that provide for the health and welfare of the taxpayer and his or her family, and for the production of income. These expenses must be reasonable in amount, and are generally based on national or local standards. Necessary expenses include such things as: (1) Food, housekeeping supplies, clothing, personal care expenses and services (based on

(continued...)

local standard or the amount actually paid for transportation
expense.  IRM, exh. 5.15.1-11 (Oct. 2000).  On that basis, the
specialist reduced petitioners' claimed monthly expense of $680
for transportation to the local standard of $289.  Likewise,
conditional expenses like credit card debt, i.e., expenses
charged to a credit card that were not for basic living expenses,
are not allowable where the tax liability would not be paid
within 5 years.  IRM, sec. 5.15.1.3 (Mar. 2000).  On that basis,
the offer specialist disregarded petitioners' claimed monthly
credit card expense of $1,600.[13]

The foregoing calculations of the offer specialist produced
monthly future income of $2,813, which the offer specialist
estimated petitioners could pay for 59 months; i.e., until

---

[12](...continued)
national standards); (2) housing, utilities, and transportation
(based on local standards); and (3) other expenses like health
care.  Other expenses, so-called conditional expenses, are
allowable only if the tax liability, including projected
accruals, can be fully paid within five years.  Credit card
payments and repayments on other unsecured debts are examples of
conditional expenses.  See, e.g., Schulman v. Commissioner, T.C.
Memo. 2002-129 n.6.

As noted in our findings, the offer specialist increased
petitioners' claimed monthly expense for housing and utilities by
$50.  The basis on which the offer specialist made this
adjustment is not clear from the record.  In any event, it
constitutes a concession by respondent.

[13] Minimum payments on unsecured debts like credit cards are
allowed if a taxpayer substantiates and justifies the expense as
necessary for either the health and welfare of the taxpayer
and/or his or her family, or for the production of income.  IRM,
sec. 5.15.1.3.2.4 (Mar. 2000).  Petitioners do not allege that
their credit card expense was incurred for either of these
reasons.

expiration of the latest period of limitation on collection applicable to petitioners' unpaid tax liabilities. The offer specialist therefore concluded that petitioners had a reasonable collection potential of $207,567, consisting of net realizable equity of $41,600 and future income of $165,967 ($2,813 per month for 59 months). The offer specialist's notes indicate that she considered Mr. Lemann's claim that he was 60 and might not work 4 more years and, noting that he had identified no health or other reasons why he would become unemployed, concluded that there were no special circumstances that would warrant a departure from the IRM guidelines in determining petitioners' reasonable collection potential, as required under section 7122(c)(2)(B). See sec. 301.7122-1(c)(3), Proced. & Admin. Regs.; IRM, secs. 5.8.5.4 (Nov. 2000), 5.8.11.2.1 (Nov. 2001).

Petitioners' Arguments

With respect to the net realizable equity found by the offer specialist, petitioners make averments in the petition to the effect that they were unable to borrow and were "undercreditworthy". We assume for purposes of the pending motion that they made a similar claim in connection with the section 6330 hearing, including a claim that they were unable to borrow against the equity in their residence (which equity constitutes the net realizable equity found by the Appeals officer). Given that petitioners had previously offered to make

a lump-sum payment of $67,000 to satisfy their tax liabilities, we do not believe it was an abuse of discretion for the Appeals officer to disregard this claim in concluding that they had net realizable equity of $40,000.

We also find no abuse of discretion in the Appeals officer's acceptance of the offer specialist's computation of future income. The offer specialist's increase in monthly income as reported by petitioners followed guidelines, given petitioners' Forms W-2 and Federal income tax return for 2001. Her decreases in reported monthly expenses likewise conformed to respondent's published guidelines. Petitioners offer no specific dispute with these adjustments. Instead, Mr. Lemann wrote in connection with the hearing that "I am now 60 years of age and may very well not have 4 more years of productivity" and that the future income calculated by the offer specialist was "impossible given my financial circumstances". Similarly, the petition avers that "application of the formula used by the Commissioner to determine the acceptable amount of an installment agreement or Offer in Compromise failed to adequately take into account Petitioners' age, earning capacity, and poor financial circumstances".

We interpret petitioners' statements as claims that the Appeals officer's determination failed to take into account their special circumstances, as required by section 7122(c)(2)(B) and IRM sections 5.8.5.4 (Nov. 2000) and 5.8.11.2.1 (Nov. 2001). We

disagree, because we are satisfied that petitioners have not identified any condition sufficient to constitute special circumstances as contemplated by the regulations and IRM guidelines. The offer specialist's case notes record that petitioners did not identify special circumstances, even after she explained the concept and solicited them. Being age 60 is not a special circumstance under the guidelines, which refer to being "elderly" as a potential special circumstance. See IRM, sec. 5.8.5.4 (Nov. 2001). Beyond the statements noted above, petitioners have not identified any facts in their petition or in their opposition to the motion for summary judgment that might constitute special circumstances, such as poor health, disability, advanced age, or dependents with special needs. We accordingly do not believe it was an abuse of discretion for the Appeals officer to conclude that no special circumstances existed. Stated differently, the Appeals officer's use of the premise that Mr. Lemann would be able to work until the traditional retirement age of 65 and generate approximately the same income over that period was not arbitrary or unreasonable in these circumstances. The Appeals officer's decision to adhere to the guidelines was therefore not an abuse of discretion.

Generally, where an Appeals officer has followed respondent's guidelines to ascertain a taxpayer's reasonable collection potential and rejected the taxpayer's collection

alternative on that basis, we have found no abuse of discretion. See <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129; see also <u>Etkin v. Commissioner</u>, T.C. Memo. 2005-245; <u>Schenkel v. Commissioner</u>, T.C. Memo. 2003-37.

<u>Balancing Efficient Collection and Intrusiveness</u>

Petitioners also argue that the Appeals officer failed to balance the need for efficient collection of taxes with petitioners' legitimate concern that any collection action be no more intrusive than necessary, as required under section 6330(c)(3)(C). We disagree. In the case of installment agreements and offers-in-compromise, respondent has established relatively detailed guidelines for his employees to follow in considering these collection alternatives. The Appeals officer and offer specialist did so in this case; indeed, the undisputed record indicates that both conducted extensive discussions with Mr. Lemann, offered suggestions regarding how petitioners might avoid levy, and solicited evidence of any special circumstances. The two collection alternatives petitioners offered fell substantially short of their ability to pay as determined under respondent's prescribed guidelines. Upon learning this, petitioners offered no others. Their delinquent tax liabilities are likewise substantial, and they have previously defaulted on an installment agreement. We are satisfied that the Appeals officer struck the appropriate balance, especially given the

abuse of discretion standard under which his actions are to be reviewed.

Genuine Issues of Material Fact

Finally, petitioners oppose respondent's motion for summary judgment on the grounds that genuine issues of material fact remain in this case. The alleged issues are: (1) Petitioners did not fail to provide evidence in support of their financial statement; (2) petitioners do not own a partial interest in the "Lehman" building; (3) petitioners' interest in certain family corporations has no market or collateral value; and (4) petitioners do not have excess income of $2,813 per month.

Regarding any failure of petitioners to provide evidence in support of their financial statement, we see no genuine issue here. The offer specialist did not modify any of the income or expense items reported by petitioners on their Form 433-A for lack of substantiation. Her adjustments to income were based on petitioners' 2001 Federal income tax return. Her adjustments to reported expenses were dictated by respondent's published guidelines.

Regarding any interest petitioners held in the "Lehman" building (B. Lemann Building) or family corporations, both the offer specialist's analysis and the Appeals officer's determination make clear that neither the value of the B. Lemann Building nor any family corporation was relied upon in

calculating petitioners' reasonable collection potential. These issues are therefore not material, even if disputed.

Regarding the issue of whether petitioners have monthly excess income of $2,813, petitioners' claim that this is a disputed issue of fact merely restates their challenge to the analysis and conclusions reached by the offer specialist and Appeals officer concerning their future income, which we have fully considered and addressed above.

Conclusion

We note that we are not called upon to decide in this case what would have been an acceptable offer-in-compromise or installment agreement. Rather, we must decide whether the Appeals officer's rejection of the collection alternatives offered by petitioners was an abuse of discretion. See Speltz v. Commissioner, 124 T.C. 165, 179-180 (2005); Fowler v. Commissioner, T.C. Memo. 2004-163. As noted, the only collection alternatives offered by petitioners were substantially below their reasonable collection potential as estimated under respondent's published guidelines. Accordingly, we hold that it was not an abuse of discretion to reject them, that there are no genuine issues of material fact that would preclude summary judgment, and that respondent is entitled to a decision in his favor that he may proceed with the proposed collection by levy.

We shall therefore grant respondent's motion for summary judgment.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.