T.C. Summary Opinion 2008-21


UNITED STATES TAX COURT


LAWRENCE JAY RUSS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4899-06S.                Filed February 28, 2008.


Lawrence Jay Russ, pro se.

<u>Linette B. Angelastro</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise

indicated, subsequent section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner filed the petition in this case in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. The only issue before the Court is whether respondent abused his discretion in sustaining the decision to file a Federal tax lien with respect to petitioner's income tax liabilities for the taxable years 1998, 1999, 2000, 2001, and 2002 (years in issue).[1]

## Background

Petitioner resided in California when he filed the petition in this case. The parties did not file a stipulation of facts.

Petitioner filed delinquent Federal income tax returns for the years in issue. Each return reported tax owed, but payment was not included with the returns. Respondent selected petitioner's 1999 Federal income tax return for examination and determined a deficiency for that year. Respondent issued a notice of deficiency, and petitioner timely petitioned this Court

---

[1] Respondent moved for summary judgment pursuant to Rule 121. Having called this case for trial and taken petitioner's testimony, we will deny respondent's motion for summary judgment and decide this case on the merits. Petitioner also made several oral motions at trial. For reasons discussed infra pp. 18-19, we will deny petitioner's motions.

for redetermination. Petitioner and respondent executed a stipulated decision which was entered by the Court.[2]

Respondent assessed a deficiency for 1999 in accordance with the stipulated decision. In addition, respondent assessed unpaid taxes for 1998, 2000, 2001, and 2002 based on the balance due returns petitioner filed for those years, as well as interest and additions to tax for late filing.

Petitioner submitted an offer-in-compromise (OIC) with respect to his tax liabilities for the years in issue. Petitioner offered $5,320, paid over 24 months, to settle an aggregate liability that exceeded $32,000 for the 5 tax years (not including interest and additions to tax). Respondent considered the OIC, determined that petitioner could pay the entire liability over time, and rejected the OIC. Petitioner requested an administrative review of the rejection of his OIC.

Respondent filed a notice of Federal tax lien for the years in issue in Ventura County, California, on March 17, 2005. The notice listed petitioner's unpaid balance as:

---

[2] Docket No. 2721-02, stipulated decision entered Jan. 9, 2003.

Table 1:  Unpaid Taxes by Year

| Tax Year | Tax Due |
|----------|---------|
| 1998 | $6,577.17 |
| 1999 | 11,003.93 |
| 2000 | 5,752.52 |
| 2001 | 6,053.45 |
| 2002 | 3,260.58 |
| Total | 32,647.65 |

In response to the notice of Federal tax lien Filing and Your Right to a Hearing Under IRC 6320 sent to him on March 24, 2005, petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing.

On September 15, 2005, after consulting with petitioner, respondent consolidated the two appeals (the appeal of the rejection of the OIC and the appeal of the Federal tax lien filing) with one Appeals Officer (AO).  The AO scheduled a hearing with petitioner for October 5, 2005.

Before the hearing, the AO analyzed petitioner's financial situation and determined what expenses were allowable under Internal Revenue Manual (IRM) guidelines.  Petitioner's central complaint with the rejection of his OIC was the exclusion of his monthly credit card payments from the expenses allowed in computing his income available to pay his outstanding tax liabilities.

At the face-to-face conference between petitioner and the AO on October 5, 2005, petitioner sought approval of his OIC and did not challenge the underlying tax liabilities.  The AO explained

that the IRS could not accept the OIC because: (1) Petitioner's OIC computation reduced his income available to pay taxes by his credit card payments, and (2) petitioner had the ability to pay the full liability over time. The AO offered an installment agreement as a collection alternative, with monthly payments designed to pay the entire liability. The proposed installment amount was $800 per month for 2006 and $1,210 per month beginning in January, 2007. Petitioner rejected the installment agreement, asserting that he could not afford the proposed monthly payments.

On October 7, 2005, the AO wrote petitioner a letter explaining his determination and enclosed an installment agreement form. The AO determined petitioner's income history as follows:

Table 2: Income Earned by Year

| Tax Year | Income |
|----------|--------|
| 2000 | $88,804 |
| 2001 | 80,004 |
| 2002 | 68,985 |
| 2003 | 77,635 |
| 2004 | 87,637 |

Petitioner, the OIC examiner, and the AO analyzed petitioner's income, expenses, and ability to pay his taxes as follows:

Table 3:   <u>Analysis of Ability To Pay Tax Liabilities</u>

|  | <u>Petitioner</u> | <u>OIC</u> | <u>AO</u> |
|---|---|---|---|
| Monthly income | $6,334 | $6,324 | $7,303 |
| Necessary living expenses |  |  |  |
|   National expense | 1,037 | 953 | 953 |
|   Local housing & utilities | 1,500 | 1,500 | 1,500 |
|   Local transportation[1] | 833 | 353 | 553 |
| Other allowable expenses |  |  |  |
|   Health care | 76 | 114 | 114 |
|   Taxes | 2,088 | 2,085 | 2,522 |
| Other - non-priority debt | <u>1,112</u> | <u>-0-</u> | <u>-0-</u> |
| Total expenses | 6,646 | 5,005 | 5,642 |
| Income available to |  |  |  |
|   pay taxes | -0- | 1,319 | 1,661 |
| Realizable equity in assets | -0- | 4,152 | 4,152 |
| Reasonable collection |  |  |  |
|   potential[2] | -0- | 83,292 | 103,812 |

[1] The record does not explain the discrepancy between the local transportation allowances used by the OIC examiner and the AO.

[2] Reasonable collection potential is calculated by multiplying petitioner's monthly income available to pay taxes by 60 months and adding the realizable equity in petitioner's assets to the product.

On February 3, 2006, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.  Petitioner filed a timely petition for lien or levy action (collection action) with this Court.

The Court calendared this case for trial at the trial session of the Court commencing October 3, 2006, in Los Angeles, California.  Respondent filed a motion for summary judgment on September 5, 2006.  When the case was called from the calendar, the parties advised the Court that they had reached a basis of settlement and expected to submit settlement documents within 90

days.  The parties indicated that petitioner was prepared to concede the case and to enter an installment agreement with respondent.  The Court granted respondent's oral motion to withdraw the motion for summary judgment and ordered the parties to submit a status report or decision documents within 90 days.

After the Court allowed additional time to submit the decision documents, the parties indicated that they had not been able to execute a settlement agreement.  The Court again set the case for trial commencing June 18, 2007.  Respondent filed another motion for summary judgment on June 4, 2007.

When this matter was called for trial, petitioner made several oral motions, including:  (1) Motion for dismissal of tax penalties; (2) motion for reduction of taxes due; (3) motion to accept original offer-in-compromise; and (4) motion to dismiss taxes and penalties for tax years 2001 and 2002.  The Court took petitioner's oral motions and respondent's motion for summary judgment, filed June 4, 2007, under advisement, and the case was deemed submitted.

## Discussion

The parties dispute whether petitioner's minimum monthly payments on his credit card debt represent an allowable expense against income available to pay taxes in consideration of an offer-in-compromise.  Petitioner argues that not allowing such expenses amounts to discrimination against taxpayers with

unsecured debts.  Respondent asserts that the Federal tax lien has priority over these debts and that credit card payments are not necessary expenses properly allowable under IRM guidelines. Finally, respondent contends that:  (1) Petitioner's future income available to pay taxes (monthly gross income less necessary expenses, not including the credit card payments) is sufficient to pay his tax liability in full before the end of the statutory period for collections; (2) because petitioner can fully pay the tax liability, he is not eligible for an offer-in-compromise; and (3) it was not an abuse of discretion for the AO to confirm the rejection of the OIC, to propose an installment agreement as the available collection alternative, and to sustain the collection action.

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer when the Secretary demands payment of the taxpayer's tax liability and the taxpayer fails to pay those taxes.  Such a lien arises when an assessment is made.  Sec. 6322.  Section 6323(a) requires the Secretary to file a notice of Federal tax lien if the lien is to be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor.  Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that a taxpayer shall be notified in writing by the Secretary of the filing of a notice of Federal tax lien and provided with an opportunity for an administrative hearing. If timely requested, the Office of Appeals conducts an administrative hearing under section 6320 in accordance with the procedural requirements of section 6330.[3] Sec. 6320(c). At the administrative hearing, a taxpayer is entitled to raise any relevant issue relating to the unpaid tax, including a spousal defense or collection alternatives such as an offer-in-compromise or an installment agreement. Sec. 6330(c)(2); sec. 301.6330-1(e)(1), Proced. & Admin. Regs. A taxpayer also may challenge the existence or amount of the underlying tax liability,

---

[3] Sec. 6330(b)(3) ensures a measure of impartiality by requiring that, unless the taxpayer waives the requirement, the sec. 6330 hearing be conducted by an AO who has had no prior involvement with the unpaid tax at issue in the hearing. Murphy v. Commissioner, 125 T.C. 301, 324-325 (2005), affd. 469 F.3d 27 (1st Cir. 2006). Respondent filed the notice of Federal tax lien on Mar. 17, 2005, and assigned the administrative appeal of the OIC to an AO on Mar. 18, 2005. Respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 dated Mar. 24, 2005. Respondent initially assigned petitioner's request for a sec. 6320 hearing, submitted Apr. 28, 2005, to a different AO. On Sept. 15, 2005, the OIC AO consulted with petitioner, took responsibility for both the OIC appeal and the sec. 6320 hearing, and scheduled a face-to-face hearing for Oct. 5, 2005. Sec. 6330(c)(2)(A)(III) requires the AO to consider collection alternatives raised by the taxpayer, which, in this case, include the reconsideration of the rejected OIC. Petitioner has not claimed that the AO's assignment to both the OIC appeal and the sec. 6320 hearing violated sec. 6330(b)(3). In any event, we conclude that it did not, because the OIC appeal and the sec. 6320 hearing were conducted simultaneously by an AO with no prior involvement with the unpaid taxes at issue.

including a liability reported on the taxpayer's original return, if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B); see also Urbano v. Commissioner, 122 T.C. 384, 389-390 (2004); Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004).

At the conclusion of the hearing, the AO must determine whether and how to proceed with collection. The AO must consider: (1) The Secretary's verification that the requirements of applicable law or administrative procedure have been met; (2) issues raised by the taxpayer at the hearing, including challenges to the appropriateness of the collection action and any collection alternatives proposed by the taxpayer; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. See sec. 6330(c)(3).

This Court has jurisdiction under section 6330 to review the Commissioner's administrative determinations. Sec. 6330(d); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). Where the underlying tax liability is properly at issue, we review the determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. Id. at 182.

Petitioner received a notice of deficiency for the tax year 1999 and thus may not dispute the underlying deficiency for that year.[4]  For the remaining tax years, petitioner had the opportunity at the section 6320 hearing to challenge the underlying tax liabilities but did not.  "This statutory preclusion is triggered by the opportunity to contest the underlying liability, even if the opportunity is not pursued." Bell v. Commissioner, 126 T.C. 356, 358 (2006); Goza v. Commissioner, supra at 182-183.  Accordingly, we review respondent's determination for abuse of discretion.

Section 6159 authorizes the Secretary to enter into a written installment agreement with a taxpayer if such an agreement will facilitate the full or partial collection of the tax liability.  Section 7122(a) permits the Secretary to compromise tax liabilities.  Section 7122(c) requires the Secretary to prescribe guidelines for evaluating offers in compromise and to "develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses."  Sec. 7122(c)(1) and (2)(A).

---

[4] Furthermore, petitioner already petitioned this Court for redetermination of the deficiency for 1999.  As mentioned supra p. 3, that case resulted in a stipulated decision, and respondent assessed the deficiency stipulated in that decision.

Regulations implementing section 7122 set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability, (2) doubt as to collectibility, and (3) to promote effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to liability is not an issue in this case.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Where the reasonable collection potential of a case exceeds the taxpayer's liability, doubt as to collectibility is not a ground for compromise.

However, if collection of the full liability would cause the taxpayer economic hardship within the meaning of section 301.6343-1, Proced. & Admin. Regs., the Secretary may enter into a compromise on the ground of effective tax administration. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.; see also Murphy v. Commissioner, 125 T.C. 301, 310 (2005), affd. 469 F.3d 27 (1st Cir. 2006). Economic hardship is present when the taxpayer is unable to pay reasonable basic living expenses. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

The Secretary has promulgated collection guidelines in IRM pt. 5.15. "Allowable expenses include those expenses that meet the necessary expense test." IRM pt. 5.15.1.7(1) (2004). "Necessary expenses" are defined as those necessary to provide

for the production of income and/or for the health and welfare of the taxpayer and his family. Id. The sum of the necessary expenses establishes the minimum amount the taxpayer needs to live. Id.

A taxpayer's reasonable collection potential is determined, in part, using published guidelines for certain national and local allowances for basic living expenses. Income and assets in excess of those needed for basic living expenses are considered available to satisfy Federal income tax liabilities. This strict formulaic approach is disregarded, however, on a showing by the taxpayer of special circumstances including, but not limited to, advanced age, poor health, history of unemployment, disability, dependents with special needs, or medical catastrophe, that may cause an offer to be accepted notwithstanding that it is for less than the taxpayer's reasonable collection potential. Lemann v. Commissioner, T.C. Memo. 2006-37.

Petitioner asserted generally that the published expense schedules do not adequately reflect the cost of living in greater Los Angeles. The Court does not doubt that living in southern California is expensive. However, the scheme of national and local expense standards employed by the Commissioner reasonably attempts to consider regional and local costs. Local standards, for example, cover two necessary expenses: Housing and

transportation.[5]  Housing standards are established for each
county within a State.  Transportation standards include not only
ownership costs based on nationwide figures for loan or lease
payments but also operating costs determined by census region and
metropolitan area.  IRM pt. 5.15.1.7(4) (2004).  A taxpayer
seeking a deviation from the expense standards must substantiate
that he has necessary expenses exceeding the standards and that
those expenses are reasonable.  IRM pt. 5.8.5.5.1.2 (2005).
Petitioner failed to document or otherwise substantiate that he
has such reasonable and necessary expenses in excess of the
standards.  We hold that his generalized assertion is
insufficient to require a deviation.[6]

---

[5] National standards combine five necessary expenses:  Four
from the Bureau of Labor Statistics Consumer Expenditure Survey,
namely food, housekeeping supplies, apparel and services, and
personal care products and services; and a discretionary amount,
categorized as miscellaneous, established by the Internal Revenue
Service.  IRM pt. 5.15.1.7(3) (2004).

[6] Petitioner explains that his unemployment was the major
cause of his unpaid taxes.  However, the Court notes that the
only period of unemployment reflected in the record occurred
between approximately August 2001 and April 2002; yet most of
petitioner's tax liability, more than 70 percent, results from
unpaid taxes for tax years 1998, 1999, and 2000.  See Table 1,
supra p. 4.  Petitioner has also not indicated that he
anticipates future unemployment.  Petitioner is an engineer
working in the high-tech industry, as opposed to a seasonal
worker subject to regular lay-offs, for example.  On the record
before the Court, we conclude that petitioner has not
demonstrated a history of unemployment sufficient to require a
deviation from the reasonable collection potential formula.

In contrast to necessary expenses, "conditional expenses" are those expenditures that do not meet the necessary expense test. IRM pt. 5.15.1.7(6) (2004). In general, the IRS expects a taxpayer to pay toward his liability the difference between his gross income and his necessary, allowable expenses. The Secretary instructs that installment agreements will be based on a taxpayer's maximum ability to pay; "i.e., how quickly a taxpayer can fully pay the tax liability." IRM pt. 5.15.1.2(6) (2004).

However, the "Five Year Rule" of IRM pt. 5.15.1.2(5) (2004), provides that excessive necessary and conditional expenses may be allowed if the expenses are reasonable and the tax liability, including projected accruals, will be fully paid within 5 years. Necessary expenses above the national and local standards are "excessive necessary" expenses. This flexibility is limited, however, to cases where the taxpayer will fully pay his liability within 5 years.[7]

---

[7] Given that the 60-month reasonable collection potentials calculated by the OIC examiner and by the AO both substantially exceed petitioner's aggregate tax liability, it appears that a 5-year installment plan may permit petitioner to make some payments toward his credit card debt. Excluding interest and penalties, the monthly installment amount required to pay the aggregate liability reflected on the notice of Federal tax lien filing in full over 5 years is $475. The installment agreement mailed to petitioner after the face-to-face hearing specified an initial monthly installment payment of $800. Both amounts are substantially smaller than petitioner's income available to pay taxes as determined by the OIC examiner ($1,319) and the AO

(continued...)

IRM pt. 5.8 provides guidelines for offers in compromise. In evaluating an OIC, the IRS estimates the taxpayer's reasonable collection potential (RCP). The RCP is calculated by determining, then adding together: (1) The taxpayer's "net realizable equity"; i.e., quick sale value less amounts owed to secured lien holders with priority over Federal tax liens; and (2) the taxpayer's "future income"; i.e., the amount collectible from his expected future gross income after allowing for necessary living expenses. IRM secs. 5.8.5.3.1, 5.8.5.5 (2005). "Generally, the amount to be collected from future income is calculated by taking the projected gross monthly income less allowable expenses and multiplying the difference times the number of months remaining on the statutory period for collection." IRM pt. 5.8.5.5.5.1 (2005).

In a compromise, the Government will not collect the full amount of the tax. As a result, the conditional expenses rules for an OIC differ from the rules for installment agreements. IRM pt. 5.8.5.5.3.1 (2005). With respect to conditional expenses, such as credit card payments, "although the payment may be allowed in an installment agreement where the tax will be paid in full, it [the conditional expense] will not be allowed for computation of an acceptable offer amount because the Federal

---

[7](...continued)
($1,661). See Table 3, _supra_ p. 6.

government has priority rights to the funds."[8]  IRM pt. 5.8.5.5.3.8 (2004).

The AO followed published guidelines in computing petitioner's future income and determined that petitioner's RCP exceeded $100,000.

Petitioner complains that the AO inappropriately increased petitioner's monthly income based on a year-end bonus that was not guaranteed.  The record does not disclose the precise reason the AO determined that petitioner and the OIC examiner had understated petitioner's 2004 income.  However, even the original OIC examiner determined that petitioner's RCP was more than $80,000.  Both RCPs are substantially greater than petitioner's tax liability and both demonstrate that respondent determined that petitioner can pay his liability in full.

---

[8] If a taxpayer justifies and substantiates that expenses for unsecured debts like credit card minimum payments are necessary for either the production of income or for the health and welfare of the taxpayer and his family, those expenses are allowable.  Lemann v. Commissioner, T.C. Memo. 2006-37 n.13.  Petitioner testified vaguely:  (1) That some of his credit card debt resulted from the purchase of household items and living expenses; (2) that he did not remember what he purchased; and (3) that he used a credit card when he did not have sufficient cashflow, whether employed or unemployed.  He did not remember whether he bought food with his credit cards.  He may have charged dinners but not necessarily groceries.  Petitioner does not specifically allege that his credit card debt resulted from necessary expenditures for the production of income or for his family's health and welfare.  Accordingly, we conclude that this unsecured debt is not allowable as an expense in an offer-in-compromise.  See id.

The record indicates that the AO determined that the requirements of applicable law and administrative procedure were satisfied. The AO considered petitioner's proposed OIC and confirmed the rejection of that OIC on the basis of a proper application of the IRM guidelines. Finally, the AO determined that the lien balanced the need for efficient collection against the taxpayer's concern that the collection action be no more intrusive than necessary. We conclude that respondent has not abused his discretion.

Petitioner's Motions

At trial the Court explained to petitioner that its jurisdiction in collection appeals cases is strictly limited by statute and that the Court can only review whether respondent abused his discretion. Petitioner asked the Court for various forms of relief, including dismissal of tax penalties, reduction of taxes due, acceptance of his original OIC, and dismissal of taxes and penalties for certain years.

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent provided by Congress. See sec. 7442; see also GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000). Following a hearing under section 6320, section 6330(d)(1) permits the taxpayer to appeal the Commissioner's determination to the Tax Court. Iannone v. Commissioner, 122 T.C. at 290. However, as previously

indicated, where, as here, the underlying tax liability is not at issue, the Tax Court's review is limited to determining whether the Commissioner abused his discretion when issuing the notice of determination.  See <u>Goza v. Commissioner</u>, 114 T.C. at 181-182.  The Court is not authorized to provide the relief petitioner requests.  As a result, the Court will deny petitioner's motions.

<u>An appropriate order and decision will be entered</u>.