T.C. Memo. 2008-259

UNITED STATES TAX COURT

LEROY WRIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1429-06L.                    Filed November 18, 2008.

<u>Frederick J. O'Laughlin</u>, for petitioner.

<u>G. Chad Barton</u>, for respondent.


MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed with the

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

collection of petitioner's 1993, 1994, 1995, 1996, 1999, and 2000 Federal income tax liabilities.

Background

The parties submitted this case fully stipulated under Rule 122. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Oklahoma when he filed his petition.

Petitioner failed to file timely Federal income tax returns for 1993, 1994, and 1995. After respondent prepared substitutes for returns under section 6020(b) for the above years, petitioner filed Federal income tax returns for those years but failed to pay all of the tax reported on the returns. Respondent assessed the income tax reported on the returns as well as additions to tax and interest.

Petitioner filed Federal income tax returns for 1996, 1999, and 2000 but failed to pay all of the tax reported on the returns. Respondent assessed the income tax reported on the returns as well as additions to tax and interest.

On June 22, 2005, respondent issued petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 1993, 1994, 1995, 1996, 1999, and 2000. Petitioner timely submitted a Form 12153, Request for a Collection Due Process Hearing. In a note attached to his Form 12153, petitioner stated

that he disagreed with the proposed levy because it would cause him great hardship and he could not pay.

On September 13, 2005, Settlement Officer Debra Alcorte (Ms. Alcorte) mailed petitioner a letter scheduling a telephone hearing for October 13, 2005. Ms. Alcorte requested that petitioner provide the following items: (1) A completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, or Form 433-B, Collection Information Statement for Businesses; (2) copies of bank statements for the past 3 months; (3) copies of wage statements for the last three pay periods; (4) copies of a mortgage statement or rental agreement; and (5) copies of life and health insurance policies, if applicable. On October 20, 2005, petitioner submitted Form 433-A on which he indicated that he was a single, self-employed individual operating "Wright Way Const" and that he had income and living expenses as follows:

| Income | | Living expenses | |
|---|---|---|---|
| Source | Gross monthly | Expense items | Actual monthly |
| Net income from business | $1,405 | Food, clothing, misc. | $300 |
| Total | 1,405 | Housing and utilities | 600 |
| | | Transportation | 200 |
| | | Health care | 500 |
| | | Taxes (income and FICA) | 155 |
| | | Court ordered payments | 200 |
| | | Total | 1,955 |

Petitioner attached to the Form 433-A copies of 10 checks drawn on the account of TLJ Wrightway, L.L.C.,[2] payable to petitioner:

| Date | Amount |
|------|--------|
| 7/1/05 | [1]$1,500 |
| 7/15/05 | 1,080 |
| 7/29/05 | 1,387 |
| 8/5/05 | 1,958 |
| 8/12/05 | 850 |
| 8/19/05 | 1,033 |
| 8/23/05 | 500 |
| 8/26/05 | 500 |
| 9/2/05 | 958 |
| 9/9/05 | 400 |
| Total | 10,166 |

[1]Amounts are rounded to the nearest dollar.

Petitioner also provided copies of statements of accounts held at Tinker Federal Credit Union (TFCU) for July and September 2005[3] showing deposits totaling $800 and $2,326.52,[4] respectively, and statements for a checking account held at Republic Bank & Trust for August and September 2005 showing no activity. Petitioner indicated on Form 433-A that he owned two automobiles valued at

---

[2]The record indicates that TLJ Wrightway, L.L.C., is the business petitioner operates and to which he referred as "Wright Way Const" on Form 433-A.

[3]The TFCU statements show that the owner of the account is Carla J. Gathright. Petitioner provided a voided check drawn on the same account and bearing his name, and he listed the account as his account on Form 433-A.

[4]The September 2005 amount includes two deposits of $150 made by transfer from Carla Gathright.

$1,000[5] and $500, real estate valued at $40,000 subject to a loan balance of $27,000, furniture/personal effects valued at $750, horses valued at $1,250, and tools used in business valued at $1,500 subject to a loan balance of $1,000.

On October 20, 2005, Ms. Alcorte held a telephone hearing during which petitioner's representative, Frederick J. O'Laughlin (Mr. O'Laughlin), indicated that petitioner was seeking an offer-in-compromise of $2,000.[6] Ms. Alcorte advised Mr. O'Laughlin that she had not seen the Form 433-A before the hearing and would need to conduct research to evaluate the offer. After reviewing petitioner's Form 433-A, Ms. Alcorte made four adjustments to the income and expenses reported on the form. She increased petitioner's net monthly income from business to $3,700. Ms. Alcorte calculated the net monthly income from business by totaling the amounts on copies of 10 checks attached to the Form 433-A and dividing the total by 2.75.[7] She also increased

_____

[5]Petitioner indicated on the Form 433-A that the automobile valued at $1,000 was subject to a loan, but he did not indicate the loan balance.

[6]At Mr. O'Laughlin's request, the telephone hearing originally scheduled for Oct. 13, 2005, was rescheduled for Oct. 20, 2005.

[7]In a June 28, 2006, letter Ms. Alcorte explained that she recalculated petitioner's income as $3,700 on the basis of bank statements. However, handwritten notes next to the copies of the checks suggest she relied on the checks rather than the bank statements. It also appears Ms. Alcorte used 2.75 because the checks are dated between July 1 and Sept. 9, 2005, and this time
(continued...)

petitioner's monthly housing and utilities expenses to $649, the maximum allowed under the national standards, and she increased petitioner's transportation expense to $300 in accordance with the applicable standards.  Finally, Ms. Alcorte decreased petitioner's health care expense to $200.[8]  Ms. Alcorte subtracted the adjusted monthly living expenses from the adjusted monthly gross income and determined that petitioner had excess monthly income of $1,596.[9]  On October 28, 2005, Ms. Alcorte also conducted an online search to determine petitioner's assets and found 13 addresses listed for petitioner and several vehicles registered in the State of Mississippi under the name "Lee Henry Wright".

---

[7](...continued)
period is not a full 3 months.

[8]In the letter dated June 28, 2006, Ms. Alcorte explained that she decreased petitioner's health care expense to $200 to allow the average.  The record does not show how Ms. Alcorte calculated the average.

[9]The following table shows Ms. Alcorte's calculations:

| Income | | Living expenses | |
|--------|------|-----------------|-------|
| Source | Gross monthly | Expense items | Actual monthly |
| Net income from business | $3,700 | Food, clothing, misc. | $649 |
| Total | 3,700 | Housing and utilities | 600 |
| | | Transportation | 300 |
| | | Health care | 200 |
| | | Taxes (income and FICA) | 155 |
| | | Court ordered payments | 200 |
| | | Total | 2,104 |

On December 14, 2005, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 for 1993, 1994, 1995, 1996, 1999, and 2000 sustaining the proposed levy. On January 19, 2006, petitioner petitioned this Court challenging respondent's determination.

On May 16, 2006, the parties filed a joint motion to remand. We granted the joint motion and remanded this case to respondent's Appeals Office.

On June 8, 2006, Ms. Alcorte sent Mr. O'Laughlin a letter scheduling a telephone hearing for June 28, 2006. Ms. Alcorte asked petitioner for information regarding his horses and proof that petitioner did not own certain real and personal property. In response Mr. O'Laughlin explained that the only real estate petitioner owned was the property reported on the Form 433-A. Mr. O'Laughlin also stated that the total value of the horses was $1,250, and in March 2006 petitioner had sold a mule "for $70 with a value of $50." Mr. O'Laughlin also provided an affidavit in which petitioner swore that he at no time owned any of the vehicles registered in Mississippi to "Lee Henry Wright".

On June 28, 2006, Ms. Alcorte held a telephone hearing with Mr. O'Laughlin (the second hearing). During the second hearing Mr. O'Laughlin asked Ms. Alcorte to consider an offer-in-compromise of $2,000. Ms. Alcorte informed Mr. O'Laughlin that the offer was not feasible because on the basis of her analysis

of petitioner's assets and future income the minimum offer was $82,908.  Ms. Alcorte suggested that petitioner enter into a partial payment installment agreement.

On or about June 28, 2006,[10] Mr. O'Laughlin faxed Ms. Alcorte Form 656, Offer in Compromise, in which petitioner sought to compromise his tax liability for $2,000 based on doubt as to collectibility.[11]  On the Form 656, petitioner asserted that he could not afford to pay the full amount of his tax liabilities. On June 28, 2006, Ms. Alcorte faxed Mr. O'Laughlin a letter explaining that petitioner's offer-in-compromise was unacceptable as the minimum offer amount was $82,908 and suggesting a partial payment installment agreement of $1,596 per month.  Ms. Alcorte also explained that she determined petitioner's excess monthly income of $1,596 on the basis of her adjustments to petitioner's Form 433-A, that petitioner's income potential for the following 48 months was $76,608,[12] and that petitioner's net realizable equity in assets was $6,300.  Ms. Alcorte determined petitioner's net realizable equity in his assets by adding the amounts attributable to real estate ($5,000) and animals ($1,300) he

[10]Although the parties stipulated that petitioner's counsel sent the offer-in-compromise by fax on June 28, 2006, the fax appears to have been sent on June 27, 2006.

[11]Petitioner submitted the June 2006 offer-in-compromise with respect to 1993, 1994, 1995, 1996, 1999, and 2000.

[12]Ms. Alcorte arrived at petitioner's future income by multiplying petitioner's excess monthly income by 48.

owned.  Ms. Alcorte determined petitioner's equity in his real estate by taking 80 percent of the value of the real estate listed on his Form 433-A and subtracting the loan balance reported on the Form 433-A.  She determined the equity in the animals by adding the value of two horses ($750 and $500) and the value of a mule ($50).[13]

On July 5 and 6, 2006, Ms. Alcorte held telephone conferences with Mr. O'Laughlin during which they discussed the offer-in-compromise and the partial payment installment agreement.  Mr. O'Laughlin informed her that petitioner did not wish to enter into a partial payment installment agreement because petitioner "would get a better deal by filing for bankruptcy."

On July 17, 2006, respondent issued petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice).  In the supplemental notice, the Appeals Office determined that respondent met all administrative and procedural requirements, that the offer-in-compromise was too low, that no viable alternatives to the levy were established, and that the levy was not considered an overly intrusive action.

---

[13]In calculating net realizable equity in assets Ms. Alcorte added the value of the mule although petitioner had sold the mule in March 2006.

The parties have stipulated Ms. Alcorte's sworn declaration dated August 21, 2006, with attachments (declaration).  In the declaration Ms. Alcorte stated that she made her determination to proceed with the levy after reviewing (1) the correspondence between respondent and petitioner or Mr. O'Laughlin, (2) documents petitioner sent to Ms. Alcorte, (3) results of the research she conducted on October 28, 2005, such as the State of Mississippi Motor Vehicles Report, property assessment record, and a printout of online search results, and (4) TXMODA[14] transcripts of petitioner's account for 1993, 1994, 1995, 1996, 1999, and 2000 (transcripts).  From the transcripts, Ms. Alcorte determined that respondent followed administrative procedures before the issuance of the supplemental notice.  Ms. Alcorte attached to the declaration all documents she reviewed.

<u>Discussion</u>

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  If the person requests a hearing, a hearing shall be held before an impartial officer or employee of

---

[14]A TXMODA transcript contains current account information from the Commissioner's master file.  TXMODA is a command that the Commissioner's employee enters into the Commissioner's integrated data retrieval system (IDRS) to obtain a transcript. <u>Crow v. Commissioner</u>, T.C. Memo. 2002-149 n.6.  In essence, IDRS is the interface between the Commissioner's employees and the Commissioner's various computer systems.  <u>Id.</u>

the Internal Revenue Service Office of Appeals. Sec. 6330(b)(1), (3). At the hearing, a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may contest the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a notice of deficiency for the tax liability or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must make a determination whether the proposed levy action may proceed. The Appeals Office is required to take into consideration: (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing. Where the underlying tax liability is not in dispute, the Court will review the determination of the

Appeals Office for abuse of discretion.  <u>Lunsford v. Commissioner</u>, 117 T.C. 183, 185 (2001); <u>Sego v. Commissioner</u>, <u>supra</u> at 610; <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000).  An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law."  <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

Petitioner does not dispute the underlying tax liability for any of the years in question.[15]  Accordingly, we shall review respondent's determination for abuse of discretion.

Petitioner argues that respondent erred in the determination to sustain the levy because Ms. Alcorte incorrectly calculated petitioner's gross monthly income.  Petitioner asks that we again remand his case to respondent's Appeals Office to redetermine petitioner's excess monthly income for an offer-in-compromise or installment agreement.

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(c) provides that the Secretary shall prescribe guidelines for evaluation of whether an offer-in-compromise should be accepted.  Regulations under section 7122 set forth three grounds for compromise of a taxpayer's liability.  One of those grounds is doubt as to collectibility.  A compromise based

---

[15]Although the record does not indicate whether petitioner received a notice of deficiency, he does not challenge the underlying liability.

on doubt as to collectibility may be accepted "where the taxpayer's assets and income are less than the full amount of the liability." Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.

In a section 6330 proceeding, we do not normally conduct an independent review of whether an offer-in-compromise is acceptable. Rather, our review is generally limited to determining whether the hearing officer's or Appeals officer's rejection of the offer-in-compromise submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006). We have found no abuse of discretion where the hearing officer followed the Commissioner's guidelines in rejecting the taxpayer's collection alternative. See, e.g., McClanahan v. Commissioner, T.C. Memo. 2008-161; Lemann v. Commissioner, T.C. Memo. 2006-37; Schulman v. Commissioner, T.C. Memo. 2002-129.

The Internal Revenue Manual (IRM) contains procedures for the submission and evaluation of offers-in-compromise under section 7122. Under the IRM, absent special circumstances, an offer-in-compromise based on doubt as to collectibility is acceptable if it reflects the taxpayer's reasonable collection potential. 1 Administration, IRM (CCH), pt. 5.8.1.1.3(3), at 16,253-16,254 (Sept. 1, 2005). The IRM provides that a taxpayer's reasonable collection potential consists of, inter

alia, the taxpayer's net realizable equity in his assets and his future income potential.  Id. pt. 5.8.4.4.1, at 16,307 (Sept. 1, 2005).  The IRM defines the net realizable equity in assets as quick sale value, which is usually calculated at 80 percent of the fair market value, less amounts owed to secured lien holders with priority over the Federal tax lien.  Id. pt. 5.8.5.3.1(1), (3), at 16,337 (Sept. 1, 2005).  The IRM defines the future income potential with respect to a cash offer as expected future income minus necessary living expenses multiplied by 48 months.[16]

---

[16]The Financial Analysis Handbook of the IRM (the Handbook), 2 Administration, IRM (CCH), pt. 5.15 (May 1, 2004), as in effect when petitioner submitted his Form 433-A and the offer-in-compromise, provides that net income from self-employment consisted of the amount the taxpayer earned after allowing for ordinary and necessary business expenses.  2 Administration, IRM (CCH), pt. 5.15.1.11(2)(c) (May 1, 2004).  The Handbook and part 5.8.5 of the IRM contain instructions for analyzing a taxpayer's financial condition to determine reasonable collection potential. 1 Administration, IRM (CCH), pt. 5.8.5.1(1) at 16,333 (Sept. 1, 2005); 2 Administration, IRM (CCH), pt. 5.15.1.1(1) (May 1, 2004).  Both part 5.8.5 of the IRM and the Handbook instruct the reviewing officer to verify the taxpayer's collection information statement.  1 Administration, IRM (CCH), pt. 5.8.5.2(1) at 16,333 (Sept. 1, 2005); 2 Administration, IRM (CCH), pt. 5.15.1.3(3) (May 1, 2004).  Such verification includes "reviewing information available from internal sources and requesting that the taxpayer provide additional information or documents that are necessary to determine reasonable collection potential".  1 Administration, IRM (CCH), pt. 5.8.5.2(1) at 16,333 (Sept. 1, 2005); 2 Administration, IRM (CCH), pt. 5.15.1.3(3) (May 1, 2004).

The Handbook provides that the reviewing officer should verify as much of the collection information statement as possible through internal sources, including, inter alia, (1) RTVUE, which is a record of line items from Federal income tax returns and accompanying schedules, Whittington v. Commissioner, T.C. Memo. 1999-279 n.3, or the last filed return, (2) state motor vehicles records, and (3) real estate records.  2

(continued...)

Id. pt. 5.8.4.4.1, at 16,307 (Sept. 1, 2005); see also id. pt. 5.8.5.5, at 16,339-7 (Sept. 1, 2005).

Ms. Alcorte calculated petitioner's net realizable equity in assets as $6,300.  The record indicates she determined this amount by first calculating the quick sale value of the real estate as $32,000 and then subtracting the loan balance of $27,000.  She based the calculations on the market value and loan balance information petitioner provided on the Form 433-A.  Ms. Alcorte also added the value of petitioner's animals of $1,300.  Ms. Alcorte also determined that petitioner's gross monthly income was $3,700 and net monthly income was $1,596.  Ms. Alcorte based her calculations of petitioner's income on copies of the 10 checks drawn on the account of TLJ Wrightway, L.L.C., payable to petitioner.

---

[16](...continued)
Administration, IRM (CCH), pt. 5.15.1.5(1), (4) (May 1, 2004). The Handbook also provides that the reviewing officer should use RTVUE or the taxpayer's last filed return, including Schedule C, Profit or Loss From Business, to compare the reported income to income declared on the collection information statement.  2 Administration, IRM (CCH), pt. 5.15.1.5(4) (May 1, 2004).  The IRM provides that when internal sources are unavailable or indicate a discrepancy, the officer should request the taxpayer to provide reasonable information to support the collection information financial statement.  2 Administration, IRM (CCH), pt. 5.15.1.5(2) (May 1, 2004).  With respect to external sources for self-employed taxpayers, the IRM requires the reviewing officer to request certain documents, such as proof of income for the prior 3 months, and to compare average earnings to the Form 433-A income.  1 Administration, IRM (CCH), pt. 5.8.5.2.2.(6), at 16,335 (Sept. 1, 2005).

Although we have some concern that Ms. Alcorte's analysis of petitioner's future income was incomplete and her determination of petitioner's future income potential was flawed, we do not need to reach this issue in deciding whether her determination to sustain the proposed levy was an abuse of discretion. Petitioner submitted an offer-in-compromise of $2,000. The offer-in-compromise was $3,000 less than net realizable equity in real estate and $4,250 less than net realizable equity in real estate and horses he owned when he submitted the offer-in-compromise. We conclude that the offer-in-compromise was less than net realizable equity in petitioner's assets, and this fact alone justified Ms. Alcorte's rejection of the offer-in-compromise.

Ms. Alcorte also discussed her concerns about petitioner's offer-in-compromise with petitioner's counsel and gave petitioner a chance to respond before she made her determination to proceed with the proposed collection action. For example, the stipulated record indicates that during the first hearing on October 20, 2005, Mr. O'Laughlin told Ms. Alcorte that on the Form 433-A petitioner overstated the value of real estate due to necessary repairs. However, petitioner never documented the need for repairs, and he did not submit a revised Form 433-A. Petitioner also did not dispute Ms. Alcorte's calculation of petitioner's net realizable equity in his assets based on the information petitioner had submitted. After Ms. Alcorte suggested a partial

payment installment agreement during the second hearing, petitioner did not propose a revised collection alternative. Instead, Mr. O'Laughlin conveyed to Ms. Alcorte petitioner's decision not to enter into a partial payment installment agreement as petitioner "would get a better deal by filing for bankruptcy." Petitioner's failure to submit a revised offer-in-compromise or any other reasonable collection alternative supports respondent's determination that the only viable alternative is the proposed levy.

On the basis of the record presented, we conclude that Ms. Alcorte did not abuse her discretion when she rejected petitioner's offer-in-compromise because the offer did not satisfy the requirements for a proper offer-in-compromise based on doubt as to collectibility. We have considered the remaining arguments made by the parties and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit. We conclude it is neither necessary nor productive to remand the case to respondent. We sustain respondent's determination to proceed with collection of petitioner's 1993, 1994, 1995, 1996, 1999, and 2000 Federal income tax liabilities.

To reflect the foregoing,

Decision will be entered
for respondent.