T.C. Memo. 2012-238

UNITED STATES TAX COURT

WAYNE CLARKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11538-11L.                    Filed August 16, 2012.

<u>Beverly L. Winstead</u>, for petitioner.

<u>Michael A. Raiken</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  The petition in this case was filed in response to a notice of
determination concerning collection action sustaining a final notice of intent to levy
with respect to income tax, additions to tax, and interest for 2008 and 2009.  The
issues for decision are:

[*2]   (1) whether the settlement officer (SO) assigned to this case abused his discretion by not adequately considering petitioner's installment agreement request. We hold the SO did not abuse his discretion; and

(2) whether the SO abused his discretion in using national standards to determine petitioner's reasonable collection potential rather than using petitioner's actual expenses.  We hold the SO did not abuse his discretion.

## FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Maryland.

During 2007, 2008, and 2009 petitioner was self-employed as a consultant and operated his consulting activities through a limited liability company called Clarke & Associates, LLC.  Clarke & Associates was wholly owned by petitioner and was treated as a disregarded entity during those years.

On October 20, 2008, petitioner filed his 2007 Federal income tax return reporting $498,576[1] of taxable income and self-assessed tax of $176,586. Respondent assessed the tax reported on the return on November 24, 2008. Petitioner made a payment of $5,000 with the 2007 tax return but made no estimated tax payments or other advance payment of his income tax liability.

---

[1]All dollar amounts are rounded to the nearest dollar.

**[*3]** Since filing the 2007 tax return, petitioner has made $42,444 in additional payments toward the 2007 tax liability.

On October 22, 2009, petitioner filed his 2008 tax return reporting $234,168 of taxable income and self-assessed tax of $81,428. Respondent assessed the tax reported on the return on November 16, 2009. Petitioner made no estimated tax payments or other advance payments of his 2008 tax liability, made no payments with his return, and has made no payments toward the liability since the return was filed.

On April 15, 2010, petitioner filed his 2009 return reporting $165,795 of taxable income and self-assessed tax of $49,505. Respondent assessed the tax reported on the return on May 13, 2010. Petitioner made no estimated tax payments or other advance payments of his 2009 tax liability, made no payments with his return, and has made no payments toward the liability since the return was filed.

In addition to liability for the previously described unpaid tax (as well certain additions to tax[2] and interest), petitioner also had a $49 unpaid liability remaining from his 2005 tax as of January 4, 2011.

---

[2]Additions to tax assessed were the estimated tax addition and the failure to pay tax addition for both 2008 and 2009. It is not clear which additions to tax, if any, were assessed for 2007.

[*4]  On September 18, 2009, petitioner purchased a home for $950,000.  In order to help pay for the home, petitioner obtained a mortgage for $741,757.  To make the downpayment, petitioner withdrew approximately $183,000 from his brokerage account.  The home has at least 4,000 square feet of interior finished living space, is on a lot of approximately two acres in a gated "golf course community", and has four bedrooms and five bathrooms.  Petitioner lived there with his son and no one else.  Before purchasing the home, petitioner stayed in a rental.[3]

Petitioner's work as a consultant involved convincing residential and commercial real estate developers and executives to develop land in Prince Georges County, Maryland, the county in which he lived.  Petitioner set up an office in one of the rooms in his home where he would meet potential and existing business clients.  Before buying the home petitioner did not have his own office and would often meet clients in restaurants or hotel lobbies.

The parties stipulated that "On November 13, 2009, petitioner requested an installment agreement for the payment of his tax liabilities for 2005, 2007, 2008, and 2009."  This stipulation appears to be incorrect in part, given that petitioner

---

[3]Petitioner simply testified that he "was renting".  He did not describe the place he was renting.

[*5] did not file his 2009 tax return until April 15, 2010. However, the 2008 Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, submitted into evidence does show a "PENDING INSTALLMENT AGREEMENT" on November 13, 2009, as well as on November 17, 2009. The 2008 Form 4340 reflects no payments made as a result of an installment agreement, and an entry for April 21, 2010, states: "REVERSES PENDING INSTALLMENT AGREEMENT". The parties did not expand upon the facts regarding this requested installment agreement.

On August 18, 2010, petitioner submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. This Form 433-A stated that petitioner's total monthly income was $14,773 and his total monthly living expenses were $14,026. The monthly living expenses included $6,105 for housing and utilities.

On November 5, 2010, respondent mailed to petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy), for petitioner's 2008 and 2009 taxable years. On November 10, 2010, petitioner timely submitted a request for a collection due process (CDP) or equivalent hearing. In his CDP hearing request petitioner asked for an installment agreement (but not an offer-in-compromise (OIC)) and stated that his reasonable

[*6] expenses exceeded his income.  Petitioner did not dispute the underlying liabilities in his CDP hearing request.

There is no evidence, and petitioner has not claimed, that he followed through on his request for an installment agreement.  Instead, on January 11, 2011, petitioner submitted a $50,000 OIC on Form 656, Offer in Compromise, for his 2005, 2007, 2008, and 2009 tax liabilities.  On the Form 656 petitioner stated that the reason for the OIC was doubt as to collectibility, that he would borrow money from friends and family to pay the offered amount, and that he would pay the $50,000 in monthly installments of $600 over the course of 84 months.[4]  When petitioner submitted the OIC his remaining tax liabilities were over $350,000 for years 2005, 2007, 2008, and 2009 combined.

On January 31, 2011, respondent received a second Form 433-A from petitioner.  This Form 433-A stated that petitioner had a total monthly income of $13,744 and total monthly living expenses of $21,428.  However, petitioner's math regarding the living expenses appears to be incorrect, as the sum of the individual expenses is only $17,703.  As with the first Form 433-A, one of the

---

[4]It appears petitioner believed this "deferred periodic payment" OIC was the same as an installment agreement.  This would explain why petitioner asked for an installment agreement (and not an OIC) in his CDP hearing request, only to then submit an OIC (but not a proposed installment agreement).

[*7] expenses listed is $6,105 for housing and utilities. The Form 433-A also listed a monthly expense of $3,725 resulting from an installment agreement with the State of Maryland regarding State tax petitioner owed for 2007. While that installment agreement had recently ended when the Form 433-A was submitted, petitioner was in the process of negotiating another installment agreement with the State of Maryland regarding $36,000 in unpaid 2008 and 2009 State taxes. Finally, the Form 433-A states that petitioner had equity of $60,000 in his home, $10,000 in one of his two automobiles, and $2,500 in his furniture. Petitioner had no significant liquid assets when the Form 433-A was submitted.

The SO assigned to petitioner's case reviewed the proposed OIC but found that petitioner's reasonable collection potential was $369,000. As a result, on February 28, 2011, the SO mailed petitioner a letter informing him that the OIC would not be accepted. The letter also scheduled a CDP hearing for March 31, 2011.

In determining petitioner's reasonable collection potential, the SO determined that petitioner's allowable monthly expenses were only $8,743. However, just as petitioner had, the SO incorrectly added the various expenses; and respondent now admits the allowable monthly expenses should have totaled $8,953. The two most significant adjustments were to amounts petitioner had

**[*8]** listed for the State tax installment agreement and for housing and utilities expenses. The SO did not allow any amounts for the State tax installment agreement, apparently because petitioner did have an installment agreement at the time the second Form 433-A was submitted. The SO also found petitioner's allowable housing and utilities expenses were only $1,646 by using respondent's local housing and utilities standard for petitioner's area.

On March 31, 2011, the SO and petitioner's representative held a telephone conference wherein they discussed petitioner's reasonable collection potential and the SO's rejection of the OIC. The SO stated that an installment agreement under which petitioner would make monthly payments of $3,500 to $4,000 might be acceptable even though the requested OIC was not. However, the representative stated that she did not want to enter into an installment agreement on behalf of petitioner at that time. The representative agreed that the underlying liabilities were not in dispute and that petitioner's rights had not been violated.

On April 12, 2011, the SO issued a notice of determination sustaining the notice of intent to levy. Petitioner timely filed a petition contesting respondent's determination.

[*9]                               OPINION

I.  CDP Hearings in General and Standard of Review

Before proceeding with a levy, the Commissioner must issue a final notice of intent to levy and notify the taxpayer of the right to a hearing.  Sec. 6330(a), (b)(1).[5] During the hearing a taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection action and possible collection alternatives. Sec. 6330(c)(2)(A).  Following the hearing, the Appeals Office must make a determination whether the lien filing was appropriate and is required to consider: (1) whether the Secretary has met the requirements of applicable law and administrative procedure; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).  The SO considered each of these prongs in this case and found they should not prevent the collection action from proceeding.

Petitioner agrees that the Secretary has met the requirements of applicable law and administrative procedure and is not challenging the underlying liabilities.

---

[5]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

[*10] However, petitioner claims that the SO otherwise erred in rejecting petitioner's proposed collection alternatives. Where a taxpayer's underlying tax liability is not in dispute, the Court reviews the Commissioner's determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). To establish an abuse of discretion, the taxpayer must prove that the decision of the Commissioner was arbitrary, capricious, or without sound basis in fact or in law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007) (citing Sego v. Commissioner, 114 T.C. at 610, and Woodral v. Commissioner, 112 T.C. 19, 23 (1999)); Tinnerman v. Commissioner, T.C. Memo. 2010-150, aff'd, 448 Fed. Appx. 73 (D.C. Cir. 2012). In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the hearing or otherwise brought to the attention of the Appeals Office. Giamelli v. Commissioner, 129 T.C. at 115; Tinnerman v. Commissioner, T.C. Memo. 2010-150.

II. Whether the SO Abused His Discretion by Not Adequately Considering Petitioner's Installment Agreement Request

In his pretrial memo, petitioner states that he "initially proposed a collection alternative of an installment agreement" but that "Respondent did not consider his installment agreement request". Petitioner claims that respondent's failure to do

**[\*11]** so amounted to an abuse of discretion. Petitioner did not raise this argument in his posttrial brief, but we will briefly address it.

Although the parties stipulated that petitioner requested an installment agreement for the payment of his tax liabilities on November 13, 2009, no payments were made as the result of any installment agreement. The 2008 Form 4340 states that the pending installment agreement was reversed on April 21, 2010, and no other evidence regarding this proposed installment agreement was presented. We find petitioner failed to prove abuse of discretion regarding such an installment agreement.

On his November 10, 2010, CDP request, petitioner asked for an installment agreement (but not an OIC) and stated that his reasonable expenses exceeded his income. However, there is no evidence that petitioner actually submitted a proposed installment agreement after this date. Rather, it appears petitioner meant to request an OIC, but confused an installment agreement with the $600 per month deferred periodic payment OIC he later proposed on Form 656. At the CDP hearing the SO stated that an installment agreement under which petitioner would make monthly payments of $3,500 to $4,000 might be acceptable; however, petitioner's representative stated she did not wish to enter into an installment agreement on behalf of petitioner at that time. No other evidence regarding any

**[*12]** other proposed installment agreement was produced.  Given these facts, we find petitioner failed to prove abuse of discretion regarding this potential installment agreement.

III. <u>Whether the SO Abused His Discretion in Using National and Local Standards To Determine Petitioner's Collection Potential Rather Than Using Petitioner's Actual Expenses</u>

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws.  Generally speaking, there are "prescribe[d] guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute."  Sec. 7122(d)(1).  In prescribing guidelines there are "schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses."  Sec. 7122(d)(2)(A).  In every case Internal Revenue Service officers and employees must determine "whether the use of the schedules * * * is appropriate and shall not use the schedules to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses."  Sec. 7122(d)(2)(B).

The Commissioner will generally compromise a liability on the basis of doubt as to collectibility only if the liability exceeds the taxpayer's reasonable

[*13] collection potential. Murphy v. Commissioner, 125 T.C. 301, 308-310 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). As we have previously stated--

> A taxpayer's reasonable collection potential is determined, in part, using published guidelines for certain national and local allowances for basic living expenses, and essentially treating income and assets in excess of those needed for basic living expenses as available to satisfy Federal income tax liabilities. The foregoing formulaic approach is disregarded, however, upon a showing by the taxpayer of special circumstances including, but not limited to, advanced age, poor health, history of unemployment, disability, dependents with special needs, or medical catastrophe, that may cause an offer to be accepted notwithstanding that it is for less than the taxpayer's reasonable collection potential.

Lemann v. Commissioner, T.C. Memo. 2006-37. For purposes of the formulaic approach, allowable basic living expenses include reasonable "expenses that are necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income." Internal Revenue Manual, pt. 5.15.1.7(1) (Oct. 2, 2009).

Petitioner claims that he "purchased his primary residence to help promote confidence among businesses that Prince George's County is still a booming community" and that he used his home "office to meet prospective clients and the location of his office allowed him to produce income". Petitioner further claims that without the home office "he would be forced to rent outside space which would not be a viable option considering the unpredictable nature of his income".

**[*14]** Petitioner thus argues that he has a special circumstance which should excuse him from the local standard housing and utilities allowance and, alternatively, that he should be allowed his claimed housing and utilities expenses because his home "is necessary for the production of his income".[6] We disagree.

As stated supra p. 10, in reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the hearing or otherwise brought to the attention of the Appeals Office. Giamelli v. Commissioner, 129 T.C. at 115; Tinnerman v. Commissioner, T.C. Memo. 2010-150. While respondent was generally aware of petitioner's business,[7] there was no evidence presented that petitioner made the Appeals Office aware of the fact that one of the rooms in his home was used as an office for Clarke & Associates. Indeed, each Form 433-A petitioner submitted listed an address for Clarke & Associates that was different from his personal address listed. There was no evidence presented that petitioner informed respondent's Appeals Office or the SO that his housing expenses may have helped him (through Clarke &

---

[6]Petitioner has not argued that the SO abused his discretion in making other adjustments to petitioner's stated monthly expenses.

[7]An Integrated Collection System history transcript for petitioner showing respondent's revenue officer's collection actions against petitioner stated: "Tp is a zoning consultant, helps deal with governments when a store wants to open a store." The transcript also stated that "tp's business is Clark and Associates LLC".

[*15] Associates) to produce income. Because petitioner failed to prove this information was provided to the SO, we find that he failed to prove the SO abused his discretion in using the local standard housing and utilities allowances instead of petitioner's stated housing and utilities expenses.

Even if petitioner had informed the SO of the facts regarding his business and home office, we would still rule that the SO did not abuse his discretion, as we find that petitioner's home was not a necessary expense for production of his income and that no special circumstance exists which would allow him to deduct his stated housing and utilities expenses. Apart from vague testimony, petitioner offered no evidence that owning the home helped Clarke & Associates generate business. We also compare the size of the house as a whole (4,000 square feet on two acres of land with four bedrooms and five bathrooms) with the size of the areas used for business. Petitioner testified he used one room as an office[8] but that he also "spread things out in the--off the kitchen. Sometimes we bring folks in, and they sit in the living room and downstairs". Considering the cost of the house (nearly four times the local standard housing and utilities allowance) and the vague and unproven benefits to his business, we find that petitioner was not

_____

[8]Petitioner estimated the size of the room at 256 square feet but admitted he was not great at estimating square footage.

[*16] entitled to his claimed housing and utilities expenses of $6,105 a month and that the SO did not abuse his discretion in not allowing him this claimed monthly expense.

IV. Conclusion

We hold that the SO did not abuse his discretion in rejecting petitioner's proposed OIC and sustaining the proposed collection action regarding petitioner's 2008 and 2009 tax liabilities.[9] We therefore sustain the determination of the SO.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[9]Although petitioner's proposed OIC was for tax liabilities for 2005, 2007, 2008, and 2009, the notice of intent to levy related only to the 2008 and 2009 tax liabilities. This opinion does not apply to collection of the 2005 and 2007 liabilities.